UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FAUSTO SOTO,
        Petitioner,


        v.                                          CIVIL ACTION NO.
                                                    12-12023-RGS

KELLY RYAN,
        Respondent.


**REPORT AND RECOMMENDATION RE:
MOTION TO DISMISS
(DOCKET ENTRY # 21)**

**January 31, 2014**

**BOWLER, U.S.M.J.**

Respondent Kelly Ryan ("respondent"), Superintendent of the
Massachusetts Correctional Institute in Shirley, Massachusetts
("MCI-Shirley"), moves to dismiss the above styled petition for
writ of habeas corpus filed under 28 U.S.C. § 2254 ("section
2254").  (Docket Entry # 15).  Petitioner Fausto Soto
("petitioner"), an inmate at MCI-Shirley, attacks his October 1,
2007 conviction for home invasion and armed robbery while masked
rendered in Massachusetts Superior Court (Essex County) ("the
trial court" or "the trial judge") on the basis of four grounds.

The grounds for relief in the petition are as follows:  (1)
he "was convicted of a crime, home invasion, that is not
supported by the statutory language" in violation of due process
under Jackson v. Virginia, 443 U.S. 307 (1979) (ground one); (2)

"[t]he trial judge instructed the jury incorrectly on reasonable doubt as it pertained to the crime" of home invasion in violation of due process under Jackson v. Virginia, 443 U.S. 307 (1979), and Sullivan v. Louisiana, 508 U.S. 275 (1993) (ground two); (3) "[t]he trial judge deprived [petitioner] of his constitutional right of effective cross examination" (ground three); and (4) "[d]uring [petitioner's] case in chief, defense counsel attempted to impeach Martinez-Rodriguez," the victim, "with his prior record and was not allowed" (ground four).  The facts cited to support ground three are similar to those in ground four.  Both grounds complain that the trial court denied cross-examination of Jose Martinez Rodriguez ("the victim") with his prior "record" or "crimes."  In a subsequent filing, petitioner, who is proceeding pro se, identifies these grounds as a violation of due process and the Sixth Amendment.  (Docket Entry # 23).  Accordingly, this court treats grounds three and four as raising a violation of the Due Process Clause and the Confrontation Clause.

Respondent seeks to dismiss the petition because grounds one and two raise only state law claims.  As to grounds three and four, which respondent treats as a single claim, respondent submits that the Massachusetts Appeals Court's rejection of the ground is not contrary to or an unreasonable application of clearly established law as determined by the Supreme Court under the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254(d) ("section 2254").

There is little indication that petitioner seeks an evidentiary hearing.  Even if he did, a hearing is not warranted. Before allowing an evidentiary hearing, a federal "habeas judge 'must first consider whether such hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.'" Companonio v. O'Brien, 672 F.3d 101, 112 (1st Cir. 2012) (quoting Teti v. Bender, 507 F.3d 50, 62 (1st Cir. 2007)).  The Petitioner "must therefore demonstrate that his allegations would entitle him to relief and that the hearing is *likely* to elicit the factual support for those allegations."  Id. (emphasis added).

Here, the record before the state court is relatively complete.  Moreover, petitioner fails to articulate or posit facts that the state court record did not include and that, if elicited at an evidentiary hearing, would provide support for one or more grounds in the petition.  In any event, it is inappropriate to conduct an evidentiary hearing and consider new facts not before the state courts when conducting a section 2254(d)(1) analysis.  See Garuti v. Roden, 733 F.3d 18, 22 (1st Cir. 2013) ("'review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits'") (quoting Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011)).

3

PROCEDURAL BACKGROUND

On April 12, 2006, an Essex County grand jury indicted petitioner for home invasion in violation of section 18C of Massachusetts General Laws chapter 265 ("section 18C"), armed robbery while masked in violation of section 17 of chapter 265 and three other offenses that the prosecutor entered a nolle prosequi or the trial judge entered a not guilty finding.  Trial commenced on September 24, 2007.  On October 1, 2007, the jury found petitioner guilty of home invasion and armed robbery while masked.  The trial court imposed a 20 to 25 year sentence on the home invasion conviction and a concurrent 18 to 25 year sentence on the armed robbery while masked conviction.  (Docket Entry # 18, Tr. VI, S.A. 1071-1072).

On May 14, 2012, the Massachusetts Appeals Court ("the appeals court") affirmed the judgment.  Petitioner's appellate brief presented the court with grounds one and two solely in terms of state law.  Ground three tracks a Sixth Amendment Confrontation Clause claim in the appellate brief.  (Docket Entry # 18, Vol. I, S.A. 27-48).  On September 27, 2012, the Massachusetts Supreme Judicial Court ("SJC") summarily denied petitioner's application for further appellate review.

FACTUAL BACKGROUND[1]

_____

[1] Citations to the trial transcripts are provided only for direct quotations.

The convictions arise out of an incident that took place in March 2006.  At the time, the victim lived in a three bedroom apartment on the first floor of a multifamily house on the corner of Broad and Estes Streets in Lynn, Massachusetts.  The victim, who was 28 years old at the time of the trial, rented one of the bedrooms from a woman whom he could only identify as Nicole.  She lived in the same apartment and occupied the other two bedrooms with her two children.  The victim had lived in the apartment at 23 Broad Street for "a year and a half" prior to the March 20, 2006 incident.  (Docket Entry # 18, Vol. III, S.A. 727).  Nicole and her two children were away on vacation at the time of the incident.

The apartment has a front and a rear entrance as well as a kitchen, living room and hallways.  The victim kept his belongings, including his television, clothes and radio, in his bedroom.  He shared the living room and the kitchen with Nicole and her two children.  He also had "free access to go up and down the hall and in and out the front door."  (Docket Entry # 18, Vol. III, S.A. 845-846).

A driveway leads to the rear entrance of the apartment and separates 23 Broad Street from 57 Estes Street.  Three or four steps lead up to the door at the rear entrance.

On March 19, 2006, the victim spent the night at his girlfriend's house in Lynn and returned home in the morning.

Parking his car on Broad Street, the victim walked toward the driveway and noticed one or two men walking toward him on Estes Street.  As the victim climbed the steps to the rear door and was about to put his key into the lock he heard someone speak English behind him in "[a]n aggressive tone" telling him "not to move." (Docket Entry # 18, Vol. III, S.A. 735-736).  The victim however spoke Spanish and had only "[a] little" understanding of English. (Docket Entry # 18, Vol. III, S.A. 725).  At the sound of the voice, the victim turned and saw a man, identified as Angel Rodriguez ("Rodriguez") in a police report of the incident, standing "one or two steps" below him.  Rodriguez was wearing a black mask and a black jacket and pointing a gun at the victim's face.  (Docket Entry # 18, Vol. III, S.A. 737).  Raising his hands in the air, the victim told Rodriguez, "'I don't understand you'" and "'Don't shoot.'"  (Docket Entry # 18, Vol. III, S.A. 736-737).  Rodriguez then made the victim go down the steps onto the driveway and "told him to put his hands on a car in the driveway."  (Docket Entry # 18, Vol. I, S.A. 78) (Docket Entry # 18, Vol. III, S.A. 834-835).  Thereafter, Rodriguez "pressured" the victim who then walked up the steps and, with Rodriguez pointing the "gun to [his] face," unlocked and opened the rear door with his key.  (Docket Entry # 18, Vol. III, S.A. 740, 834-835 & 843).

The victim then entered the apartment followed by Rodriguez

leaving the rear door open and went through the kitchen into the living room.  (Docket Entry # 18, Vol. III, S.A. 844-845).  Throughout, Rodriguez was pointing the gun at the victim.  With the victim seated on a living room couch, Rodriguez then used a cellular telephone or a "Nextel walkie talkie" and in English said, "'I got him, come in.'"  (Docket Entry # 18, Vol. III, S.A. 846-847).  Approximately 30 to 35 seconds later, petitioner entered the apartment through the rear entrance and came into the living room.  He was wearing a black mask as well as a backpack and carrying a gun.

Petitioner walked toward the victim and in an aggressive manner told him in Spanish to lie on the ground.  The victim complied.  Petitioner then pointed the gun at the back of petitioner's head and in Spanish told the victim, "'Take your chain off.'"  (Docket Entry # 18, Vol. III, S.A. 747).  He also ordered the victim to remove his other jewelry consisting of a ring and earrings.  Petitioner then took the victim's wallet containing approximately $75 to $80 from the victim's back pocket.  With the victim lying face down on the floor, petitioner used a cord of a cellular telephone charger to tie the victim's hands behind his back.

Still speaking in Spanish and pointing the gun at the victim's head, petitioner demanded, "'Where is the money?  Where

is the stuff?'"[2]  (Docket Entry # 18, Vol. III, S.A. 753-754).

The victim replied, "'Go search my bedroom'" whereupon Rodriguez

left the living room.  (Docket Entry # 18, Vol. III, S.A. 758).

The victim then heard noises "[l]ike when you are searching" and

"throwing things around."  (Docket Entry # 18, Vol. III, S.A.

758).  The victim also "told them to go and look for whatever

they were looking for."  (Docket Entry # 18, Vol. IV, S.A. 883).

When Rodriguez was out of the room, petitioner told the victim,

"'You do not want to speak, my friend will come.'"  (Docket Entry

# 18, Vol. III, S.A. 760).  At this point, the victim was lying

on the floor on his side facing away from petitioner because

"they" told him that if he looked at them "they will shoot

[him]."  (Docket Entry # 18, Vol. III, S.A. 759).

     About 20 to 25 seconds later, two police officers of the

Lynn Police Department, Michael Kenny ("Officer Kenny") and

Herbert Newton, entered the apartment through the back door.[3]

(Docket Entry # 18, Vol. III, S.A. 762) (Docket Entry # 18, Vol.

II, S.A. 532).  Petitioner heard the officers knock on the rear

door and say, "'Police.'"  (Docket Entry # 18, Vol. III, S.A.

---

     [2]  Although petitioner remained face down to the floor, he
identified petitioner as the person talking to him "because he's
the one that spoke Spanish."  (Docket Entry # 18, Vol. III, S.A.
753).

     [3]  As explained in the police report, an individual reported
observing a disturbance involving a hand gun on the side of 57
Estes Street which resulted in a number of officers responding to
the scene.

762).  Finding the door "wide open," the two police officers
entered the apartment while announcing their presence and
proceeded to place Rodriguez and petitioner under arrest.[4]  A
search of the apartment uncovered "a back pack, two handguns, and
two ski masks."  (Docket Entry # 18, Vol. II, S.A. 557).
Petitioner had "two keys on a ring in his hand at the scene."
(Docket Entry # 18, Vol. II, S.A. 580).  A search of his pant's
pockets uncovered a gold necklace, a gold ring as well as $78 in
one pocket and $100 in another pocket.  The police also recovered
a Motorola "Nextel-type phone" from petitioner and from
Rodriguez.  (Docket Entry # 18, Vol. II, S.A. 593).  A Detective
of the Lynn Police Department at the scene described the victim's
bedroom as being in "complete disarray."  (Docket Entry # 18,
Vol. III, S.A. 680).

        After conducting the initial search, Officer Kenny
interviewed the victim in the kitchen with Detective Daniel
Morales ("Detective Morales") of the Lynn Police Department
serving as a Spanish interpreter.  Officer Kenny wrote the police
report the same day recounting the interview and other details of
the incident.  The victim believed they were going to shoot him
"[b]ecause they were looking for money and all this stuff, I
don't know and drugs or what, but I didn't have any."  (Docket

---

        [4]  The circumstances of the arrests are not material to the
grounds for relief in the petition.

Entry # 18, Vol. III, S.A. 754).

A different Detective of the Lynn Police Department returned to the scene in the afternoon with the set of keys removed from petitioner's hands.  He used one of the two keys to open the door to the second floor apartment at 23 Broad Street.  His investigation led him to conclude that the victim paid rent for both the first and second floor apartments.[5]

<u>DISCUSSION</u>

I.  <u>Ground One</u>

Respondent submits that ground one raises only a state law claim.  It is well settled that section 2254(a) jurisdictionally limits federal habeas relief to state convictions "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); <u>see</u> 28 U.S.C. § 2241(c); <u>Swarthout v. Cooke</u>, 131 S.Ct. 859, 861 (2011) ("'"federal habeas corpus relief does not lie for errors of state law"'"); <u>Brown v. O'Brien</u>, 666 F.3d 818, 824 (1st Cir. 2012) ("[o]rdinarily, errors of state law are not the basis for federal habeas relief").  Errors of state law that do not rise to the level of a constitutional error "may not be corrected on federal habeas."  <u>Gilmore v. Taylor</u>, 508 U.S. 333, 348-349 (1993) (O'Connor, J. concurring); <u>Sawyer v. Smith</u>, 497 U.S. 227, 239 (1990) ("availability of a claim under state

---

[5]  Irrespective of the afternoon search, the facts are more than sufficient to preclude an actual innocence finding.

law does not of itself establish that a claim was available under the United States Constitution"); accord Sanna v. DiPaolo, 265 F.3d 1, 12-13 (1st Cir. 2001) (habeas review unavailable for state law error except "extreme cases" where state law or practice betrays "fundamental principle of justice" under the Due Process Clause).

In ground one, petitioner submits he "was convicted of a crime, home invasion, that is not supported by the statutory language" in violation of due process under Jackson v. Virginia, 443 U.S. 307 (1979). As supporting "facts," ground one states that Jackson "established it is a violation of due process to be tried or convicted for a crime not enumerated in the charge." (Docket Entry # 1). The supporting facts additionally state that, although "the [I]ndictment charged home invasion," the "set of facts" does not support the charge. (Docket Entry # 1). The petition does not identify what facts or "set of facts" does not support the home invasion charge. A similar claim in petitioner's appellate court brief identifies the facts as conduct that begins in public, i.e., the driveway, and continues uninterrupted into a dwelling. Mindful of petitioner's pro se status, this court construes ground one as alleging this set of facts as not supported or allowed under section 18C.

Petitioner presented the similar claim to the appeals court

solely as a violation of state law.[6]   In the brief to the appeals court, petitioner relied exclusively on decisions rendered by Massachusetts state courts to argue that the trial court erred in not dismissing the Indictment charging home invasion because section 18C does not apply to "confrontations that begin in [a] public setting," i.e., the driveway, and "subsequently move inside a dwelling" with "the assailants and victims simultaneously entering a dwelling."  (Docket Entry # 18, Vol. I, S.A. 28-29).  Petitioner neither cited federal cases nor cases involving federal constitutional principles to the appeals court.

The appeals court rejected the claim because the clear and unambiguous language of section 18C "ends the discussion."

---

[6]   In greater detail, the argument attacked the trial court's denial of a motion to dismiss the Indictment because section 18C did not reach conduct that originates in public and continues without interruption into a dwelling.  The motion to dismiss argued there was insufficient evidence to sustain the Indictment because of the purported use of false testimony before the grand jury and that Rodriguez, as opposed to petitioner, "was the principal agent of the conduct involved in the offense." (Docket Entry # 18, Vol. I, S.A. 235).  In the course of discussing the motion to dismiss at the outset of the trial, the trial court raised the more precise issue regarding the reach of section 18C as not encompassing conduct "on the street" where the victim was not enjoying the safety of his dwelling.  (Docket Entry # 18, Vol. II, S.A. 272-273).  At the outset of the second day of trial, the trial court revisited the issue of whether a home invasion takes place when the homeowner or occupant is not inside the premises but is instead brought into the home by one of the perpetrators.  (Docket Entry # 18, Vol. II, S.A. 391-392).  After hearing argument, the court denied the motion to dismiss as to the issue based primarily on the statutory language and, to a lesser degree, the "patchwork of cases" presented by the Commonwealth, including Commonwealth v. Hallums, 806 N.E.2d 965, 967 (Mass.App.Ct. 2004).

Commonwealth v. Soto, 2012 WL 1658373, at *1 (Mass.App.Ct. May 14, 2012).  The appeals court recited the elements of the offense[7] and noted that petitioner focused on the second element. The language of the statute corresponding to the second element proscribes entering a dwelling "knowing or having reason to know that one or more persons are present within or knowingly enters the dwelling place of another and remains in such dwelling place knowing or having reason to know that one or more persons are present within . . .."  Mass. Gen. L. ch. 265, § 18C.  The decision rested on state law grounds, i.e., the interpretation of the statutory language as encompassing conduct originating in public and continuing without interruption into a dwelling. Lacking jurisdiction to review errors of state law in the interpretation of a state statute, petitioner is not entitled to habeas relief with respect to ground one.

Even if petitioner overcame this defect, the claim fails on

_____

[7]   Those elements require the Commonwealth to:

show that the defendant (1) knowingly entered the dwelling place of another; (2) knowing or having reason to know that one or more persons were present within (or entered without such knowledge but then remained in the dwelling place after acquiring or having reason to acquire such knowledge); (3) while armed with a dangerous weapon; and (4) used force or threatened the imminent use of force upon any person within such dwelling place whether or not injury occurred, or intentionally caused any injury to any person within such dwelling place.

Commonwealth v. Soto, 2012 WL 1658373, at *1; accord Commonwealth v. Bell, 951 N.E.2d 35, 41 (Mass. 2011).

the merits.  De novo review applies because the appeals court did not decide the federal claim.  See Pike v. Guarino, 492 F.3d 61, 67 (1st Cir. 2007) ("federal review is de novo" when state court does not address federal claim); accord Lynch v. Ficco, 438 F.3d 35, 44 (1st Cir. 2006).  Where, as here, petitioner did not exhaust the federal claim, this court may still consider the claim and deny relief.  See 28 U.S.C. § 2254(b)(2); Clarke v. Spencer, 582 F.3d 135, 145 (1st Cir. 2009) (citing section 2254(b)(2) and stating "we can still address the merits of Clarke's claim here because we conclude the issue does not warrant habeas relief").

Ground one alleges "a violation of due process" under Jackson v. Virginia, 443 U.S. 307 (1979), refers to "facts that the statute does not allow or support" and alleges that petitioner was convicted of a crime that is not supported by the statutory language.  The ground also correctly refers to the language in Jackson "that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process." Id. at 314.  The citation to Jackson coupled with the assertion that the facts do not support a violation of the statute presents a sufficiency of the evidence challenge.  See, e.g., King v. MacEachern, 665 F.3d 247, 252 (1st Cir. 2011).  A sufficiency of the evidence challenge asks "whether, after viewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. at 319.

The Jackson standard is "applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson v. Virginia, 443 U.S. at 324; Hurtado v. Tucker, 245 F.3d 7, 12 n.8 (1st Cir. 2001).  The plain language of the statute simply requires entering the dwelling knowing that another person is inside or remaining in the dwelling after acquiring such knowledge.  Case law confirms that section 18C reaches the conduct of a perpetrator who attacks a homeowner outside his dwelling and then follows the homeowner or occupant into the dwelling where the assault continues.  See Commonwealth v. Hallums, 806 N.E.2d 965, 967 (Mass.App.Ct. 2004).  The court in Hallums rejected the defendant's argument that, "'the home invasion statute does not pertain to a fight that begins on the street and proceeds without cessation across one combatant's threshold.'"  Id.

Here too, where the conduct took place in the driveway and the back steps to the victim's dwelling and the perpetrator followed the victim into the dwelling while armed with a dangerous weapon, the second element of home invasion is

satisfied.[8]  The second element is also satisfied where the
defendant remains in the dwelling "knowing or having reason to
know" that the occupant is present.  Mass.Gen.L. ch. 265, § 18C;
see Commonwealth v. Smith, 912 N.E.2d 542, 546 (Mass.App.Ct.
2009).

During trial, the jury heard evidence that the incident
began in the driveway and continued into the dwelling with
Rodriguez following petitioner into the apartment with the
dangerous weapon of a gun pointed at the victim.  Once in the
apartment, Rodriguez used his cellular telephone or "Nextel
walkie talkie" saying that he had him, i.e., the victim.
Petitioner then entered the apartment 30 to 35 seconds later
allowing the jury to infer that petitioner entered the apartment
with knowledge that the victim was inside.  Petitioner also
remained in the apartment after he knew that the victim was
inside.  Viewing the evidence in the Commonwealth's favor, a
Jackson sufficiency challenges based on an absence of evidence to
support the second element does not warrant habeas relief.

II.  Ground Two

Ground two in the petition alleges that, "The trial judge
instructed the jury incorrectly on reasonable doubt as it

---

[8]  Consistent with the Commonwealth's allegations (Docket
Entry # 18, Vol. II, S.A. 494-495), the trial court charged the
jury on a joint venture theory.  (Docket Entry # 18, Vol. III,
S.A. 1023-1024).

pertained to the crime" of home invasion in violation of due
process under Jackson v. Virginia, 443 U.S. 307 (1979), and
Sullivan v. Louisiana, 508 U.S. 275 (1993).  (Docket Entry # 1).
The petition additionally states that, even though "the trial
judge explained the charge about home invasion, . . . the actions
presented did not constitute home invasion."  (Docket Entry # 1).
A supplemental filing adds "that reasonable doubt in the jury
instruction was error, and in violation of the Due Process Clause
as defined in In re Winship, 397 U.S. 558" (1970).  (Docket Entry
# 23).

     In the brief to the appeals court, petitioner argued that
the home invasion statute required the Commonwealth to prove
beyond a reasonable doubt that the victim was a "lawful occupant"
of the dwelling.  (Docket Entry # 18, Vol. I, S.A. 12 & 32).  The
statement of the argument in bold in the appeals court brief
tracks the language of ground two except that ground two does not
identify "the actions" of petitioner that "did not constitute
home invasion."  (Docket Entry # 1).  The petition also states
that petitioner raised the issue in ground two on direct appeal.
(Docket Entry # 1, ¶ 12(c)(1)).  Hence, the only reasonable
construction of ground two is that it challenges the failure of
the trial judge to instruct the jury that the crime of home
invasion requires the Commonwealth to prove beyond a reasonable
doubt that the victim was a lawful occupant of the dwelling.

Petitioner's appellate court brief additionally argued that the failure to include a "lawful occupant" instruction created a miscarriage of justice because the evidence overwhelmingly showed that the victim was not a lawful occupant.  Petitioner cited the fact that the victim could only identify the first name of the woman from whom he rented the bedroom.  He also pointed to the victim's testimony at trial, which the victim promptly corrected, that he lived with his girlfriend at 186 Chestnut Street in Lynn. (Docket Entry # 18, Vol. III, S.A. 39).  In presenting the argument to the appeals court, petitioner again cited only state court cases which, in turn, did not rely upon or cite federal cases or federal constitutional principles.  The appeals court decided the issue solely on the basis of two state court decisions interpreting section 18C as not requiring a showing that the person "'occupied' the dwelling 'lawfully'" coupled with the plain language of the statute.  Commonwealth v. Soto, 2012 WL 1658373, at *1.

Respondent seeks to dismiss ground two because it alleges a violation solely of state law.  To the extent the ground raises a federal constitutional claim, respondent asserts it is not exhausted.

Like ground one, ground two seeks federal habeas relief based on an error of state law.  It alleges that the trial judge instructed the jury incorrectly on the elements of home invasion

under section 18C.  It is not the province of a federal court to
rewrite state law by imposing an additional element for a state
offense which the language of the state statute does not
expressly include and state court decisions interpreting the
statute do not require.  See Waddington v. Sarausad, 555 U.S.
179, 192 n.5 (2009); see also Estelle v. McGuire, 502 U.S. 62,
67-68 (1991) ("not the province of federal habeas court to
re-examine state court determinations on state-law questions").
Indeed, the Court in Waddington reversed a Ninth Circuit decision
affirming federal habeas relief due to an instructional error
based on a state offense.  After addressing and rejecting a
federal due process claim under Cupp v. Naughten, 414 U.S. 141,
147 (1973), and its progeny, the Court unambiguously rejected the
ability of a federal habeas court to reexamine the merits of a
jury instruction that parroted the plain terms of a state statute
when a state court found the instruction unambiguous:

> The Washington Supreme Court expressly held that the jury
> instruction correctly set forth state law, App. to Pet. for
> Cert. 191a, and we have repeatedly held that "it is not the
> province of a federal habeas court to reexamine state-court
> determinations on state-law questions."  Estelle v. McGuire,
> 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

Waddington v. Sarausad, 555 U.S. at 192 n.5.  Here too, the
appeals court rejected petitioner's argument that section 18C
requires lawful occupancy because the plain language of the
statute does not require it.  Ground two is therefore immune from
federal habeas review.

Alternatively and assuming a federal claim, this court turns to the merits.  Again, the failure to exhaust state court remedies is not a bar to consider the ground and deny relief. See 28 U.S.C. § 2254(b)(2); Clarke v. Spencer, 582 F.3d at 145. As also previously noted, when a state court does not address the federal claim, "federal review is de novo."  Pike v. Guarino, 492 F.3d at 67; accord Lynch v. Ficco, 438 F.3d at 44 (de novo review applies to federal claim that was "raised before the state court but was left unresolved") (internal quotation marks omitted); Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001).  Because petitioner did not cite, rely or discuss federal constitutional law with respect to ground two in the appeals court brief and, more importantly, the appeals court did not decide the federal constitutional claim, de novo review applies.

Liberally construing ground two, it raises two possible federal constitutional claims.  The first is a due process violation based on an instructional error under Cupp v. Naughten, 414 U.S. at 147.  Ground two expressly refers to an instructional error and the denial of due process.  The second interpretation is a due process violation based on Jackson v. Virginia, 443 U.S. at 319, and In re Winship, 397 U.S. at 364, both cited by petitioner, which requires the jury to prove all the essential elements of a crime beyond a reasonable doubt.  The alleged failure to instruct on the requirement of lawful occupancy

potentially contravenes both constitutional principles.

Turning to the claims seriatim, an instructional error does not amount to a federal constitutional violation unless the omission "so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. at 147.  Before a federal court can overturn a state court conviction in which the state court used an erroneous instruction, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Id.; accord Niland v. Hall, 280 F.3d 6, 10 (1st Cir. 2002) (the petitioner has burden to show the instruction "'so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned'").  This is particularly difficult where, as here, the error is based upon an omission of language in the instructions.  Henderson v. Kibbe,  431 U.S. 145, 155 (1977) ("[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law").

"[S]tate law determines the parameters of the offense and its elements and a federal court may not reinterpret state law." Tillman v. Cook, 215 F.3d 1116, 1131 (10th Cir. 2000); see Waddington v. Sarausad, 555 U.S. at 192 n.5.  The state statute

does not expressly require lawful occupancy of the person present within the dwelling.[9]  The plain language neither qualifies nor modifies the term "one or more persons" with language describing the person or persons as "lawfully within" or as a "lawful occupant."  No Massachusetts state court case imposes the requirement of lawful occupancy of the person or persons within the dwelling as an element of section 18C.  Instead, as previously noted, the SJC sets out the elements as requiring:

> "the Commonwealth must show that the defendant (1) 'knowingly enter[ed] the dwelling place of another'; (2) 'knowing or having reason to know that one or more persons are present within' (or entered without such knowledge but then remained in the dwelling place after acquiring or having reason to acquire such knowledge); (3) 'while armed with a dangerous weapon'; and (4) 'use[d] force or threaten[ed] the imminent use of force upon any person within such dwelling place whether or not injury occur[red], or intentionally cause[d] any injury to any person within such dwelling place.'"

---

[9]  Section 18C states that:

Whoever knowingly enters the dwelling place of another knowing or having reason to know that *one or more persons are present* within or knowingly enters the dwelling place of another and remains in such dwelling place knowing or having reason to know that *one or more persons are present* within while armed with a dangerous weapon, uses force or threatens the imminent use of force upon any person within such dwelling place whether or not injury occurs, or intentionally causes any injury to any person within such dwelling place shall be punished by imprisonment in the state prison for life or for any term of not less than twenty years.

Mass.Gen.L. ch. 265, § 18C (emphasis supplied).

Commonwealth v. Bell, 951 N.E.2d 35, 41 (Mass. 2011) (quoting
Commonwealth v. Doucette, 720 N.E.2d 806, 809 (Mass. 1999),
quoting section 18C).  Accordingly, by not including an
instruction that the person or persons within the dwelling must
be lawful occupants, the trial judge did not thereby fail to
define the elements of the offense.  An instructional error in
violation of due process is therefore absent.

Turning to the second interpretation of ground two as
setting out an insufficiency challenge, the relevant due process
inquiry, as previously noted, "is whether, after viewing the
evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt."  Jackson v. Virginia, 443
U.S. at 319; accord Herrera v. Collins, 506 U.S. 390, 401 (1993)
(reiterating the "familiar standard" in Jackson).  The Court's
holding in Jackson is "an extension of its previous decision in
In re Winship, 397 U.S. 358, 364 (1970), that due process
requires that a conviction be supported by proof beyond a
reasonable doubt."  Hurtado v. Tucker, 245 F.3d at 12 n.8.

Notably, the standard under Jackson "must be applied with
explicit reference to the substantive elements of the criminal
offense as defined by state law."  Jackson v. Virginia, 443 U.S.
at 324.  Applying the Jackson standard involves "specific
reference to the elements of the offense as defined by state

law." <u>Hurtado v. Tucker</u>, 245 F.3d at 12 n.8.  As explained
above, Massachusetts law does not require that the person or
persons within the dwelling be lawful occupants as an element of
a section 18C violation.  Accordingly, whether the victim rented
a bedroom at 23 Broad Street, had keys to the second floor
apartment or had access to the entire first floor apartment is
not relevant to the issue of whether he was a person within the
dwelling within the meaning of section 18C.  Ample evidence
supports the victim's presence in the dwelling.  Consequently,
insufficient evidence to support this fact or the nonexistent
requirement of the victim's lawful occupancy does not result in a
denial of due process under <u>Jackson v. Virginia</u>, 443 U.S. at 319,
and <u>In re Winship</u>, 397 U.S. at 364.

In sum, ground two presents an issue of state law immune
from federal habeas review.  To the extent it raises a federal
constitutional claim, it fails on the merits under de novo
review.

III.  <u>Grounds Three and Four</u>

Grounds three and four concern the denial of cross-
examination of the victim on the subject of three pending heroin
charges that arose after the March 20, 2006 incident to impeach
his credibility.  Respondent seeks to dismiss the grounds under
the AEDPA's deferential standard of review as neither contrary to
nor an unreasonable application of clearly established Supreme

Court law.

The petition frames ground three as a denial of petitioner's right to cross-examine the victim about the outstanding charges, in other words, a Confrontation Clause claim under the Sixth Amendment.  Ground four phrases the issue as a violation of due process as well as a denial of the right of cross-examination by the trial court's rejection of defense counsel's request to impeach the victim with the pending drug charges.

Petitioner raised a Confrontation Clause claim in the state courts.  Specifically, on appeal he argued that depriving him of the ability to impeach the victim "with evidence of the pending criminal charges" to suggest his bias to curry favor with the prosecution deprived petitioner of his Sixth Amendment right to cross-examine the victim.  (Docket Entry # 18, Vol. I., S.A. 42).  The appeals court rejected the claim.  See Commonwealth v. Soto, 2012 WL 1658373, at *1 ("the defendant was not deprived of his constitutional right to cross-examination" by the exclusion of the victim's drug involvement).[10]

_____

[10]   The fact that the appeals court addressed the issue primarily under the law set out in Commonwealth v. Haywood, 388 N.E.2d 648 (Mass. 1979), does not implicate de novo review.  The Haywood case cites applicable Supreme Court precedent, to wit, Davis v. Alaska, 415 U.S. 308, 315 (1974) (Confrontation Clause guarantees the right of the defendant to confront the witnesses against him), and federal cases applying federal constitution law, Michelson v. U.S., 335 U.S. 469, 482 (1948) ("[a]rrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness").  Moreover, it is the decision by the state court adjudicating the

The three drug charges arose after the March 2006 incident with the first charge lodged against the victim in either June or August 2006.[11]  All three charges remained pending at the time of the September 2007 trial.  (Docket Entry # 18, Vol. III, S.A. 777, 779 & 792).  The Commonwealth initially raised the issue in a motion in limine to exclude any reference to the charges at trial.  (Docket Entry # 18, Vol. I, S.A. 237).  The trial judge addressed the matter briefly on the first day of the trial and reserved a ruling.  In response to a question by the trial judge, however, the prosecutor confirmed there were no promises, rewards or inducements offered to the victim with respect to the three cases that would influence the victim's testimony.  (Docket Entry # 18, Vol. II, S.A. 352-357).  In reserving the issue, the trial judge noted the "general rule" that "character evidence is not admissible to impeach."  (Docket Entry # 18, Vol. II, S.A. 357).

The trial judge revisited the issue after direct examination of the victim.  Defense counsel sought to ask the victim about the drug activity and whether he was cooperating with the police

claim as opposed to its reasoning that is subject to section 2254(d) review.  See Harrington v. Richter, 131 S.Ct. 770, 784-785 (2011) (when "federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits" absent "any indication or state-law procedural principles to the contrary"); Lyons v. Brady, 666 F.3d 51, 53-54 (1st Cir. 2012).

[11]  The charges were for possession with intent to distribute a Class A substance.  (Docket Entry # 18, Vol. III, S.A. 777).

"to get some leniency" or testifying in order "to assist the police." (Docket Entry # 18, Vol. III, S.A. 778-779). Defense counsel identified three areas in which the victim purportedly changed his testimony after the arrest[s].[12] (Docket Entry # 18, Vol. III, S.A. 782-784). A review of the alleged discrepancies shows there were no significant changes between the victim's pre-arrest statements about the incident and his post arrest testimony on direct examination.[13] Guided by <u>Commonwealth v. Haywood</u>, 388 N.E.2d at 648, which allows a trial judge to exclude evidence of a witness' arrest record when the witness' statements made before "he became susceptible to official pressure" did not

---

[12] The appeals court accurately sets out the three areas that defense counsel identified to the trial court as changes between the victim's pre-arrest statements about the incident and his testimony at trial on direct examination. The three areas are:

> (1) the victim told police he was first approached by Rodriguez in the "parking lot" but testified at trial that he was "up there almost behind the door with the key;" (2) the victim said the defendant never flashed a gun or showed a gun to him, "but at trial said that the defendant was carrying a gun when he entered the apartment"; and (3) the victim previously said that the defendant "was in the living room with him when the cops came in," but at trial "changed his story" and said otherwise.

<u>Commonwealth v. Soto</u>, 2012 WL 1658373, at *2.

[13] The Commonwealth's appellate court brief accurately depicts the record with respect to the victim's pre-arrest statements as not materially different from his trial testimony on direct examination. (Docket Entry # 18, Vol. I, S.A. 143-144).

change from his testimony at trial, id. at 652-653, the trial
judge found there were no significant changes and excluded the
evidence.  He did, however, leave the door open to a
reconsideration of excluding the inquiry if petitioner elicited a
material shift from the prior statements during cross-
examination.  (Docket Entry # 18, Vol. III, S.A. 791).  On
appeal, the appeals court found that the trial judge "was well
within his discretion to determine that there had been no
material shift in details, nor any other evidence that any bias
of the witness was influencing his testimony."  Commonwealth v.
Soto, 2012 WL 1658373, at *2.

The AEDPA standard of review applies to the alleged denial
of cross-examination claim under the Confrontation Clause in
ground three in light of the appeals court's decision rejecting
the claim on the merits.[14]  Section 2254(d)(1) establishes "two
categories of cases in which a state prisoner may obtain federal
habeas relief with respect to a claim adjudicated on the merits
in state court."  Williams v. Taylor, 529 U.S. 362, 404 (2000).
Under the first category, "a state court determination is
'contrary to' clearly established law if the court 'applies a
rule that contradicts the governing law set forth' by the Supreme
Court or 'confronts a set of facts that are materially
indistinguishable from a decision of [the Supreme Court] and

---

[14]   See footnote ten.

nevertheless arrives at a result different from [its] precedent.'"  Gomes v. Brady, 564 F.3d 532, 537 (1st Cir. 2009); accord Ramdass v. Angelone, 530 U.S. 156, 165-166 (2000) (decision is contrary to "clearly established federal law if it applies a legal rule that contradicts" the "prior holdings" of the Supreme Court or "reaches a different result from" a Supreme Court case "despite confronting indistinguishable facts"); Williams v. Taylor, 529 U.S. at 405-406 (same).

Under the second category, the federal court may grant the writ if the relevant state court decision "'involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'"  Williams v. Taylor, 529 U.S. at 404-405 (quoting statute with ellipses omitted).  An unreasonable application of clearly established federal law occurs if the state court "'correctly identifies the governing legal principles, but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply.'"  Gomes v. Brady, 564 F.3d at 537; see Foxworth v. St. Amand, 570 F.3d 414, 425 (1st Cir. 2009).

"'[C]learly established Federal law'" refers to "'the holdings, as opposed to the dicta, of the Supreme Court's

decisions at the time of the relevant state court decision.'"
Yeboah-Sefah v. Ficco, 556 F.3d 53, 65 (1st Cir. 2009) (internal
brackets omitted).  The inquiry is an objective one, see
McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002), insofar as
the decision "must have been 'objectively unreasonable.'"
Wiggins v. Smith, 539 U.S. 510, 520 (2003).  An objectively
unreasonable application of the relevant jurisprudence differs
from an incorrect or erroneous application of such jurisprudence.
Williams v. Taylor, 529 U.S. at 365; accord Wiggins v. Smith, 539
U.S. at 520-521 ("state court's decision must have been more than
incorrect or erroneous").  Under the unreasonable application
prong, the "habeas court may not issue the writ simply because
that court concludes in its independent judgment that the
relevant state-court decision applied clearly established federal
law erroneously or incorrectly.  Rather, that application must
also be unreasonable."  Williams v. Taylor, 529 U.S. at 365;
accord Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("question
under AEDPA is not whether a federal court believes the state
court's determination was incorrect but whether that
determination was unreasonable--a substantially higher
threshold"); Foxworth v. St. Amand, 570 F.3d at 425  ("state
court's decision is not vulnerable unless it evinces some
increment of incorrectness beyond mere error").  In order to
obtain federal habeas relief, "a state prisoner must show that

the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 131 S.Ct. 770, 786-787 (2011).

"The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986); Davis v. Alaska, 415 U.S. 308, 315 (1974) (Confrontation Clause guarantees the defendant's right to confront the witnesses against him). The "primary interest secured by [the Confrontation Clause] is the right of cross-examination." Davis v. Alaska, 415 U.S. at 315. Furthermore, exposing "'a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Delaware v. Van Arsdall, 475 U.S. at 678-679 (quoting Davis v. Alaska, 415 U.S. at 316-317).

The right to cross-examine a witness about his bias to favor the prosecution, however, does not prevent a trial judge from imposing reasonable limits on a defense counsel's cross-examination. Id. at 678. Thus, trial judges retain "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice,

confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  Delaware v. Van Arsdall, 475 U.S. at 679; see Brown v. Ruane, 630 F.3d 62, 71 (1st Cir. 2011) ("Van Arsdall Court emphasized that 'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination'") (internal ellipses omitted).  In conducting the analysis, described as a "balancing of interests," the Supreme Court considers a number of relevant factors such as "the importance of the evidence to an effective defense, Davis v. Alaska, 415 U.S." at 319; "the scope of the ban involved, Van Arsdall, 475 U.S. at 679"; "and the strength vel non of state interests weighing against admission of the evidence."  White v. Coplan, 399 F.3d 18, 24 (1st Cir. 2005) (citing Chambers v. Mississippi, 410 U.S. 284, 295 (1973)); see, e.g., Davis v. Alaska, 415 U.S. at 319 (temporary embarrassment to juvenile "by disclosure of his juvenile record . . . is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness").

In the case at bar, the appeals court did not apply a rule that contradicts the foregoing governing law.  Neither Van Arsdall nor Davis involved the exclusion of impeachment testimony that was not demonstrably false or materially different from the witness' trial testimony or that only resulted in a partial ban

on the scope of cross-examination.  Likewise, the appeals court did not confront "a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrive[] at a result different from [the Court's] precedent.'"  Gomes v. Brady, 564 F.3d at 537.  In contrast to the partial ban at issue in this case and the absence of any evidence that the Commonwealth offered the victim a promise, reward or inducement for his testimony, the Van Arsdall decision involved a complete ban on cross-examination of a government witness in a murder trial "about the *undisputed* fact that the witness had agreed to speak with the government about the murder in exchange for the dismissal of a drunk-driving charge against him."  Abram v. Gerry, 672 F.3d 45, 52 (1st Cir. 2012) (discussing Van Arsdall in habeas challenge under AEDPA) (emphasis supplied); see generally Santiago v. O'Brien, 628 F.3d 30, 33 (1st Cir. 2010) ("[t]he more dramatic examples" of Confrontation Clause violations occur when Supreme Court admits inculpatory hearsay statements over the defendant's objection).  The issue therefore reduces to whether the appeals court decision was "'an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'"  Williams v. Taylor, 529 U.S. at 404-405.

Here, the relevance of an inquiry into the pending charges was diminished by the fact that the victim did not materially

change his version of events from before and after the arrests. See generally Commonwealth v. LaVelle, 605 N.E.2d 852, 857 (Mass. 1993) ("arrest record was collateral to" bias because if "record was admitted, then the Commonwealth would be entitled to introduce the witness' prior consistent statements and hence there would be no evidence that pending charges affected the witness' testimony"). For example, at trial defense counsel argued that the victim changed his story about petitioner entering the apartment carrying a gun. The victim testified on direct examination that petitioner was carrying a gun in his hand when he entered the living room. Prior to the victim's arrest, however, Detective Morales testified before the grand jury that the victim told him that petitioner "was carrying a firearm" when he came into the apartment. (Docket Entry # 18, Vol. I, S.A. 90-91).

Defense counsel also pointed to a deviation between Rodriguez ordering the victim to put his hands on a car in the parking lot, as reflected in the police report, and his testimony on direct that he was "up there almost behind the door with the key." (Docket Entry # 18, Vol. III, S.A. 783). Defense counsel elicited the testimony about Rodriguez ordering the victim to place his hands on a car in the parking lot on cross-examination. Any additional inquiry would be cumulative.

Furthermore, the trial judge did not impose a complete ban

on questioning the victim about the arrests.  See Delaware v. Van
Arsdall, 475 U.S. at 679; White v. Coplan, 399 F.3d 18, 24 (1st
Cir. 2005).  Rather, he allowed defense counsel to elicit a shift
in the victim's testimony on cross-examination.  (Docket Entry #
18, Vol. III, S.A. 790 & 792).  There was also an insufficient
showing of the existence of any promise, reward or inducement
offered to the victim prior to his testimony at trial.
Accordingly, the decision rejecting the Confrontation Clause
claim on the part of the appeals court was neither contrary to
nor an unreasonable application of the foregoing clearly
established Supreme Court precedent.

     For similar reasons, the due process violation based on the
restriction on the victim's cross-examination in ground four
fails on the merits applying de novo review.[15]  The right of a
criminal defendant to due process is "the right to a fair
opportunity to defend against the State's accusations."  Chambers
v. Mississippi, 410 U.S. at 294; see Crane v. Kentucky, 476 U.S.
683, 690 (1986) ("Constitution guarantees criminal defendants 'a
meaningful opportunity to present a complete defense'").

     The right to present a defense, however, is not unfettered.
See Montana v. Egelhoff, 518 U.S. 37, 42 (1996).  Rather, it is

---

     [15]  Other than ground three, petitioner did not present and
the appeals court did not adjudicate a due process violation
based on the restriction the trial court imposed on the victim's
cross-examination.

subject to "reasonable restrictions."   United States v. Scheffer,
523 U.S. 303, 308 (1998).  Reasonable restrictions include "the
state's 'legitimate interest in ensuring that reliable evidence
is presented,' and evidentiary exclusions will not violate the
constitution 'so long as they are not "arbitrary" or
"disproportionate to the purposes they are designed to serve."'"
DiBenedetto v. Hall, 272 F.3d 1, 8 (1st Cir. 2001) (quoting
United States v. Scheffer, 523 U.S. at 308, quoting Rock v.
Arkansas, 483 U.S. 44, 56 (1987)).  In other words, the right to
cross-examine, "recognized as essential to due process . . . is
not absolute and may, in appropriate cases, bow to accommodate
other legitimate interests in the criminal trial process."
Chambers v. Mississippi, 410 U.S. at 294 & 295; Michigan v.
Lucas, 500 U.S. 145, 149 (1991) ("'right to present relevant
testimony is not without limitation'" and may "'bow to
accommodate other legitimate interests in the criminal trial
process'") (quoting Rock v. Arkansas, 483 U.S. at 55, quoting
Chambers v. Mississippi, 410 U.S. at 295); Santiago v. O'Brien,
628 F.3d 30, 34 (1st Cir. 2010) (describing Chambers as "[t]he
locus classicus" of "exclusion under state law of exculpatory
hearsay that the defendant wants admitted" as a violation of due
process).  A state law evidentiary reason for exclusion will
therefore "prevail unless it is 'arbitrary or disproportionate'
and 'infringe[s] upon a weighty interest of the accused.'"

Fortini v. Murphy, 257 F.3d at 46 (quoting United States v. Scheffer, 523 U.S. at 308); see also Montana v. Egelhoff, 518 U.S. at 43 (state evidentiary rule does not violate "Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental") (internal quotation marks omitted).

Here, the due process challenge implicates the application of a common law evidentiary rule that allows a trial judge to exclude an arrest record when the statements the witness made before his arrest do not differ from his testimony at trial. Commonwealth v. Haywood, 388 N.E.2d at 653-654.  In contrast, Massachusetts law affords a defendant the right to question a witness about pending criminal charges when the "witness's prior statements were inconsistent with [his] testimony at trial." Commonwealth v. LaVelle, 605 N.E.2d at 857 (paraphrasing Commonwealth v. Connor, 467 N.E.2d 1340 (Mass. 1984), in parenthetical).  A similar evidentiary rule applies in federal court.  See generally United States v. Martin, 694 F.2d 885, 888 (1st Cir. 1982) (affirming exclusion of witness' purported inconsistent statement as impeachment evidence where defendant "was unable to demonstrate that the offered testimony was inconsistent with" witness' trial testimony).

The trial judge abided by these state evidentiary principles by imposing a partial ban on cross-examination of the prior

arrests because there was an insufficient showing that the victim changed his version of events.  The record supports the trial judge's finding regarding the differences between the victim's pre-arrest statements and his post arrest testimony on direct examination.  The ban was partial inasmuch as the trial judge left the door open to reconsideration in the event of a showing of a material shift in the victim's testimony on cross-examination.  (Docket Entry # 18, Vol. III, S.A. 792).

The decision in Chambers guarantees "a fair opportunity to defend against the State's accusations," Chambers v. Mississippi, 410 U.S. at 294, "and it is generally fair to force a defendant to comply with established rules of procedure and evidence and to abide by the balancing of values such rules represent." Santiago v. O'Brien, 628 F.3d at 34 (citing Chambers v. Mississippi, 410 U.S. at 302).  The inquiry into the prior arrests would detract from the primary focus on petitioner's conduct, potentially confuse the issues and lead to the admission of the prior consistent statement in rebuttal thereby delaying the trial.  The relevance was marginal given the lack of any material inconsistency between the prior and subsequent versions of the events given by the victim.  These and other reasons preclude a finding that the trial judge's decision restricting cross-examination of the victim violated due process.  Ground four therefore fails to justify habeas relief.

CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[16] that the motion to dismiss (Docket Entry # 21) be **ALLOWED** and that the petition be dismissed with prejudice.


                              /s/ Marianne B. Bowler
                         **MARIANNE B. BOWLER**
                         United States Magistrate Judge

---

[16] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  See Rule 72(b), Fed. R. Civ. P.  Any party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.